907 So.2d 855 (2005)
DUBOIS CONSTRUCTION CO., Plaintiff-Appellee
v.
MONCLA CONSTRUCTION CO., INC., Defendant-Appellant.
No. 39,794-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*856 Hayter & Odom, L.L.C., by John O. Hayter, III, Shreveport, for Appellant.
Kristen Brown Rockett, Bossier City, for Appellee.
Before BROWN, STEWART, and CARAWAY, JJ.
BROWN, C.J.
Moncla Construction Co., Inc. ("Moncla"), a general contractor, was awarded a contract from the Caddo Parish School Board for the construction of a wing at Shreve Island Elementary School in Shreveport, Louisiana. Moncla contacted Dubois Construction Company ("Dubois") seeking quotes for several surface projects to get the site ready for construction.[1]
Moncla accepted Dubois' bid for all but one item that required destruction and removal of a 5,000 square foot concrete slab used for basketball games. In its bid on this part of the project, Dubois quoted a unit price of $2.50 per square foot or $12,500 to break up the slab, load and haul the debris off site. This part of the bid was rejected. Moncla decided to remove the slab itself and did break up the slab. Thereafter, Dubois, who had a dozer, backhoe, and dump truck already on the job site, was asked by Moncla to pick up and pile the debris on site a distance of about 100 yards. No price was mentioned. Dubois used a backhoe to pick up and load the broken concrete into a 14-cubic-yard dump truck. The truck then traveled the 100 yards to another location at the job site and dumped the load. Dubois claimed that this took two days or 16 hours, while Moncla claimed that this task was performed in less than two hours.
Dubois billed Moncla for piling up this debris at a rate of $1.50 per square foot, for a total of $7,500. Moncla, however, calculated the hourly charge for a backhoe at $80 and a dump truck at $40, for a total of $120 per hour. For the two hours Moncla claimed that it took Dubois to perform the work, Moncla paid Dubois $240, along with other amounts owed to Dubois for other work done on the job. Dubois accepted this payment and filed suit against Moncla for the difference of $7,260 in Shreveport City Court.
The trial court referred to the original bid of $2.50 per square foot, for a total of *857 $12,500, as an agreement between the parties. The court then recognized that Moncla actually broke up the slab and reduced the unit price to $1.00 per square foot and awarded Dubois $5,000. Moncla's motion for a new trial was denied and Moncla has appealed. For the reasons set forth below, we amend and, as amended, affirm.

Discussion
La. C.C. art. 1906 states that a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. A contract is formed by the consent of the parties established through an offer and acceptance. La. C.C. art. 1927. The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. Crowe v. Homesplus Manufactured Housing, Inc., 38,382 (La.App. 2d Cir.06/21/04), 877 So.2d 156.
It is clear that no contract existed between these two parties to break up and dispose of the concrete slab at $2.50 per square foot because this offer or bid was rejected by Moncla. In this respect the trial court was clearly wrong. After the rejection, however, the parties had an actual or implied agreement that the debris would be moved by Dubois. This was an entirely different task as opposed to the original request by Moncla and thus, a separate and distinct agreement between the parties. Dubois did not have to break up the slab or haul the debris off site for some distance and no dumping fees would have to be paid. Further, as Dubois testified, because the truck never left the site it could be overloaded.
The fact that the amount of compensation to be received for the services was not agreed upon does not vitiate the contract. La. C.C. art. 2054 provides:
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Where an agreement exists but the price to be paid is not stated, the court in the context of contractual interpretation must supply the missing price. The technique or measure used to determine recovery varies according to the circumstances of each case. The method to determine the price usually equals the fair market value for the goods or reasonable value for the services that were the object of the contract. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989).
In Morphy, supra at 574-75, the supreme court stated:
Morphy's remedy at law was to sue on the contract and have the court determine the remuneration he should receive for the services he rendered to CBM, utilizing the codal articles regarding interpretation of agreements. "Where one employs the services of another without specifying what compensation will be paid therefor, or when one avails himself of the services of another in performance of a task, he is bound to compensate the person so employed or who performs such a service." Doll v. Albert Weiblen Marble & Granite Co., 207 La. 769, 22 So.2d 59 (1945). "[Morphy's] claim for compensation should be considered under traditional theories of contract interpretation where a missing but implied term of the contract must be supplied by the court." Porter v. Johnson, 408 So.2d 961, 966 (La.App. 2d Cir. 1981).
Where there is a contract for the rendering of services but there is no agreement *858 for the price or compensation, the plaintiff is entitled to be paid for the services rendered under the principles of LSA-C.C. Art. 1965 [Now Art. 2055].
. . . .
Thus the Civil Code articles on Obligations have long furnished the principles for interpreting contracts ambiguous only with regard to compensation or price for agreed upon services....
... And the contract, without agreed upon price, must be interpreted as requiring that Morphy be paid a reasonable sum for his services. A reasonable sum for his services includes actual cost, including general overhead attributable to the project, and a reasonable profit. Skains v. White, 391 So.2d 1327 (La. App. 2d Cir.1980); Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (La. App. 2d Cir.1975); Swan v. Beaubouef, 206 So.2d 315 (La.App. 4th Cir.1968).
Plaintiff had the burden of proving the reasonable value of his services. Unfortunately, Dubois presented no evidence as to an industry standard or a breakdown of the work preformed. Plaintiff kept no record of the loads moved. The only evidence on this issue came from Gene Moncla, defendant's supervisor who was always on the job site. He calculated that it would have taken 12 to 15 loads. The three employees who operated Dubois' equipment did not testify. Dubois simply charged Moncla $1.50 per square foot based on the size of the original concrete slab for the debris moved without a basis in the record as to why this methodology was appropriate. The record likewise does not support the trial court's determination of a price of $1.00 per square foot.
The following testimony from Jerry Dubois, the owner of Dubois Construction Company, is instructive regarding the method of determining the reasonable value of the work at issue in the instant case:
Q: Have you ever on any project charged an hourly rate (versus a unit price)?
A: Only when the job is completed and there is (sic) some extras to do. Then we would charge by the hour.
The piling of this debris was not part of the work Dubois was originally contracted to do and was clearly "something extra." Dubois already had the necessary equipment on the job site which at times was not being used. We conclude that an hourly rate is a more appropriate measure than a unit price under the facts and circumstances of this particular case.
There was testimony by Moncla that a backhoe rental was $80 per hour and a dump truck was $40 per hour. Dubois provided no contrary figures and stated that his only expenses would be for the wages of the operator and fuel. Gene Moncla, the supervisor on the job site, testified that it took Dubois two hours to pick up and move this debris. Marvin Moncla, the owner of the construction company, testified that he kept written notes on what work was done. His notes indicate that the work at issue was started and finished on Monday morning and that Gene Moncla told him it took two hours. Marvin Moncla testified that he came to the job site that Monday morning and observed that Dubois had already finished piling up the debris. Dubois, however, testified that it took him two days to complete this job. Again, Dubois did not call any workers to substantiate his claim that it took two days to move the debris. Based on this evidence or lack thereof, the cost of these two machines would be $120 per hour. We further conclude that the weight of the evidence shows that it took about two hours to complete this work. The evidence in the record supports the finding that Dubois' costs were $240. Dubois is entitled to a reasonable profit, *859 which we set at $500. Thus, we enter judgment in favor of Dubois for $740, with credit for the $240 already paid by Moncla.

Conclusion
For the reasons stated above, judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that judgment is rendered in favor of the plaintiff, Dubois Construction Co., and against the defendant, Moncla Construction Co., Inc., for the sum of $500, together with judicial interest from date of filing the original petition, until paid. Costs of this appeal are assessed in equal proportion to both parties.
Amended and as amended, affirmed.
NOTES
[1] Particularly, to cut a drainage swale, dig detention pond, degrass, haul in dirt, move playground equipment and remove a concrete slab.