Judgment rendered February 25, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,717-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

HICK'S AUTO SALES, LLC                    Plaintiff-Appellant

versus

GO AUTO INSURANCE                         Defendant-Appellee
COMPANY, ET AL

* * * * *

Appealed from the
West Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 56,581

Honorable Alan James "Jim" Norris, Judge

* * * * *

ANTHONY J. BRUSCATO                        Counsel for Appellant


VOORHIES & LABBE                           Counsel for Appellee
By: Cyd Sheree Page


* * * * *

Before COX, THOMPSON, and ROBINSON, JJ.

**COX, J.**

This appeal arises out of West Monroe City Court, the Honorable Alan James Norris presiding. Hick's Auto Sales, LLC ("Hick's Auto") filed suit against GoAuto Insurance Company ("GoAuto"), Phyllis Davis ("Ms. Davis"), and Brianna Davis. The trial court dismissed Hick's Auto's claims against GoAuto, and Hick's Auto now appeals. For the following reasons, we affirm the trial court.

## FACTS

On January 25, 2021, Hick's Auto sold a Nissan Altima to Ms. Davis for $5,995. Ms. Davis paid a down payment of $2,800, and Hick's Auto held a lien over the remaining balance. On September 6, 2021, the Nissan was declared to be a total loss after a collision with Xavier Gray. GoAuto insured the Gray vehicle. At the time of the accident, the lien balance was $4,448.50.

After communications between GoAuto and Hick's Auto, GoAuto agreed to pay "Four Thousand Four Hundred Forty Eight Dollars and Fifty Cents ($1,350.91)" in exchange for clear title to the Nissan. GoAuto tendered a check to Hick's Auto in the amount of $1,350.91. When Hick's Auto questioned the amount, GoAuto stated that Hick's Auto would need to collect the remainder of the balance from Ms. Davis.

On February 6, 2023, Hick's Auto filed suit against GoAuto, Ms. Davis, and Brianna Davis. In its petition, Hick's Auto asserted that as lienholder, it is entitled to receive the lien amount from the insurer, GoAuto, and GoAuto's conduct constituted unfair settlement practice. Ms. Davis and Brianna Davis were named defendants because they received funds from GoAuto and were not entitled to those funds.

GoAuto filed a peremptory exception of prescription. It asserted that on January 11, 2022, it issued a letter to Hick's Auto stating that separate payments had been made to Hick's Auto and Ms. Davis, totaling $4,983, and GoAuto would not be issuing additional checks. GoAuto advised Hick's Auto to seek any remaining balance from Ms. Davis. GoAuto asserted the claim was prescribed because it was filed more than one year after the date of the damage sustained in the auto accident (September 6, 2021); more than one year had passed since November 29, 2021, when petitioner was made aware of the difference in the amount paid and what it believed it was owed; and more than one year after being advised on multiple occasions that GoAuto would not be making any additional payments on the loss (January 11, 2022, January 18, 2022, and January 19, 2022).

Hick's Auto opposed the exception of prescription. It argued that GoAuto was incorrect in citing La. C.C. art. 3492 as governing its claim. Hick's Auto asserted that its claim was for breach of a settlement agreement, which is the same as a breach of contract claim and has a 10-year prescriptive period pursuant to La. C.C. art. 3499.

On May 18, 2023, Hick's Auto filed a first amended petition, and stated the typed portions of settlement letter were written by GoAuto, and the handwritten portions of the settlement letter were filled in by Hick's Auto. Hick's Auto believed that what is required is the interpretation of an ambiguous contract, but out of caution, also prayed for reformation of the agreement to correct the error made by GoAuto. Hick's Auto requested penalties, attorney fees, and interest.

On July 12, 2023, GoAuto answered. It denied the allegations regarding liability and that the document amounted to a settlement

agreement.  GoAuto stated that this matter was subject to the exception of prescription.  It requested that Hick's Auto's demands be dismissed with prejudice at Hick's Auto's cost.

On August 24, 2023, GoAuto filed a motion and order to reset its peremptory exception of prescription.  The exception was set for hearing on October 24, 2023.  GoAuto attached a January 11, 2022, letter to Hick's Auto, which read:

> This letter will follow up our conversation from earlier.  The above vehicle was deemed a total loss due to the accident on September 6, 2021.  The Actual Cash Value of the vehicle was determined to be $4983.00.  Payment in that amount has been issued.  Ms. Davis was paid $3632.09, and Hicks Auto was paid $1350.91.  There were mistakenly two amounts shown on the Letter of Guarantee.  We understand, the $1350.91 does not settle Ms. Davis's agreement with you, and we do not expect you to send us the title.  Since we will not be obtaining the title, we will agree to return the salvage to you. Please provide us with the information of where you would like the vehicle delivered and we will make the necessary arrangements with Copart.

GoAuto attached a similar letter to Hick's Auto's counsel dated January 18, 2022.

A hearing was held on the exception of prescription.  Both parties filed post-hearing briefs reasserting their previous arguments.  On January 3, 2024, the trial court signed its judgment granting GoAuto's exception of prescription regarding any tort claims.

The trial on the merits was held on April 11, 2025, where the following testimonies were presented:[1]

Shannon Smith testified that she is a managing partner at Hick's Auto.  Ms. Smith confirmed that Hick's Auto sold a Nissan to Ms. Davis on

---

[1] Regarding Ms. Davis and Brianna Davis, Hick's Auto's counsel stated, "For the court's purpose this morning, I'm not going to pursue any claims against them."

3

January 25, 2021, for $5,995. She testified that only one payment was made on the vehicle before it was involved in a collision. Ms. Smith identified documents sent between GoAuto and Hick's Auto. She stated that the vehicle was valued at $4,983, she received a check for $1,350.91, and the amount due was $4,748.50. Ms. Smith testified that when she received the check from GoAuto, she called the adjuster, who admitted to making the clerical error; GoAuto's adjuster called Ms. Smith later to inform her that Hick's Auto would need to recover the balance difference from Ms. Davis. She stated that she was unaware of the location of the vehicle and had not seen any pictures of the damage while she was communicating with GoAuto.

Brad Diez testified that he is a total loss manager at GoAuto. He stated that GoAuto accepted liability for the property damage to the vehicle, but he did not get involved in the case until after the checks were issued. Mr. Diez confirmed that he sent a letter to Hick's Auto stating, "we found the error on the letter of guarantee." The following exchange occurred with plaintiff's counsel:

> Mr. Diez: Uh, yes sir. There's two amounts listed on the form. One is written out, alphabetically for $4,448.50. And one is numerically written $1,350.91.
>
> Mr. Bruscato: So, which one was in error?
>
> Mr. Diez: The $1,350.91.
>
> Mr. Bruscato: So, did you type this?
>
> Mr. Diez: I did not, no sir.
>
> Mr. Bruscato: Who typed it up, then?
>
> Mr. Diez: Ms. Hardnett.
>
> Mr. Bruscato: She's employed with Go Auto?
>
> Mr. Diez: She was, yes sir.

Mr. Diez testified that the letter of guarantee guaranteed that if Hick's Auto received the full lien amount for the vehicle, Hick's Auto would send the title to GoAuto. He stated that if the error was caught before the checks were issued, Hick's Auto would have received $4,448.50.

Mr. Diez testified that a lienholder only gets involved if the damage is a total loss and title is needed to sell the vehicle for salvage. He stated that there is no obligation to protect a lienholder of a third party insurance claim, which is what occurred here. Mr. Diez stated that GoAuto informed Ms. Davis of the cash value and salvage value of the vehicle, and she told GoAuto that she did not want to keep the vehicle. Ms. Davis informed GoAuto that she could not find the original title to the vehicle and would obtain a duplicate. GoAuto became aware of the lien when it was later contacted by Hick's Auto to find out the status of the claim. After discovering the error, Mr. Diez contacted his manager. Mr. Diez testified that after speaking with his manager, he communicated to Hick's Auto that the full claim amount had been paid between Hick's Auto and Ms. Davis, and GoAuto would not be issuing an additional check to Hick's Auto. He stated that because GoAuto would not be obtaining clear title to sell the vehicle for salvage, they would arrange for the vehicle to be sent to Hick's Auto.

The trial court questioned Mr. Diez about what would have happened if the situation were reversed. The trial court asked, "Well, let me ask you this, if GoAuto had paid $4,448.50 to Hicks… [a]nd Hicks didn't send you the title. What would you have done?" Mr. Diez responded that GoAuto would have sued the lienholder based on the letter of guarantee.

5

At the conclusion of trial, counsel and the trial court engaged in discussion of the matter and both parties agreed to submit post-trial arguments. The trial court signed its judgment on June 23, 2025. It cited its written ruling and dismissed Hick's Auto's claims against GoAuto. The trial court stated in its written ruling that the letter of guarantee did not obligate GoAuto to pay Hick's Auto $4,448.50. It stated that the letter of guarantee only obligated Hick's Auto to submit the title *if* GoAuto paid off the lien. Costs were assessed to Hick's Auto. Hick's Auto now appeals.

**DISCUSSION**

Hick's Auto argues that the trial court erred in failing to recognize that it had an enforceable contract with GoAuto. It asserts that GoAuto's letter of guarantee was an offer made in order to settle the property damage claim. Therefore, when it accepted GoAuto's offer, they had a contractual agreement. Although the document had two different amounts listed (words and numerals), the intent of the parties should have prevailed, and any interpretation should have gone against GoAuto because GoAuto employees prepared the document. Hick's Auto asserts the trial court erred in determining this inconsistency vitiated the contract.

GoAuto states that the letter of guarantee did not create any obligation on the part of GoAuto. GoAuto argues that the letter of guarantee did not obligate anyone to do anything until there was a change in position. If the amount was paid, Hick's Auto would have been obligated to provide clear title. If GoAuto did not pay the full amount, Hick's Auto was under no obligation to submit the title. GoAuto asserts that the trial court judgment should be affirmed.

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. A contract is unilateral when the party who accepts the obligation of the other does not assume a reciprocal obligation. La. C.C. art. 1907.

The determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. *Dubois Const. Co. v. Moncla Const. Co., Inc.*, 39,794 (La. App. 2 Cir. 6/29/05), 907 So. 2d 855. The four elements of a valid contract are: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose. La. C.C. arts. 1918, 1927, 1966, 1971; *Provenza v. Cent. & Sw. Servs., Inc.*, 34,162 (La. App. 2 Cir. 12/15/00), 775 So. 2d 84. There is no contract unless both parties are bound. *Id*; *Keller v. Sisters of Charity of Incarnate Word,* 597 So. 2d 1113 (La. App. 2d Cir. 1992).

In a footnote, the trial court cited La. C.C. art. 1907 regarding unilateral contracts when determining that GoAuto was not required to send payment. The trial court found that the letter states that *if* GoAuto sends the payment to pay off the lien, Hick's Auto will submit a clear title to GoAuto. The record does not indicate that Hick's Auto has supplied clear title to GoAuto.

We do not find that the trial court was clearly wrong in finding the letter did not obligate GoAuto to do anything. GoAuto did not consent to obligate itself to do anything in the letter. The letter states, "This letter of guarantee will confirm that the clear title will be sent to the vehicle and claim below. Please attach a copy of the title/registration with this letter of

7

guarantee." Under that, the vehicle and driver information is listed, along with the mailing address to GoAuto. The letter then reads:

> Upon receipt of the funds in the amount of: Four Thousand Four Hundred Forty Eight Dollars and Fifty Cents ($1,350.91) Upon signing this document you are certifying that all tax, title and license fees have been paid to the Louisiana Department of Public Safety and Corrections Office of Motor Vehicles for the above captioned vehicle.

Below that, Shannon Smith filled out Hick's Auto's information and date. We note that there is no signature on the part of either party on this one-page letter.

Nothing in this letter states that GoAuto has agreed to issue a check or requires it to issue a check within a certain amount of time. This is an agreement on the part of Hick's Auto that tax, title, and license fees have been paid, and the title will be sent to GoAuto upon receipt of funds. There is no contractual agreement obligating GoAuto to send an additional check. Therefore, GoAuto was not bound. As stated above, because both parties were not bound, there was no contract. We do not find the trial court erred in dismissing Hick's Auto's claim against GoAuto. We affirm the trial court's judgment.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs associated with this appeal are cast on Appellant, Hick's Auto Sales, LLC.

**AFFIRMED**.